UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:09-CV-389-RJC-DCK

| | | |
|---|---|---|
| MINNACCA, INC., d/b/a HOUSE OF MAURI SIMONE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM AND RECOMMENDATION |
| STEPHEN SINGH, | ) ) | |
| Defendant. | ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Motion to Dismiss and Compel Arbitration" (Document No. 7) filed by Stephen Singh ("Singh") on October 6, 2009. Minnacca, Inc. ("Minnacca") opposes the motion. The motion has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having fully considered the record, including the motion and response (Document No. 7, 10), the undersigned recommends that the motion be **granted**, based upon the following proposed findings of fact and conclusions of law:

## I. Background

Singh was a founding employee of Minnacca in 2003 and was responsible for company finances and records. (Document No. 1, ¶ 49). On April 30, 2008, the parties entered into a contract ("Purchase Agreement") for the purchase of Singh's interest in Minnacca for $75,000 and payment of Singh's debts totaling approximately $53,000. Minnacca contends that, shortly after Singh left, it realized its financial records were missing and that Singh had misled Minnacca about its actual financial condition (i.e unprofitable and nearly insolvent, rather than profitable).[1]

---

[1] For the year preceding Singh's departure (April 30, 2007 through April 29, 2008), the records Singh kept for Minnacca showed a net profit of approximately $160,000. After Singh

On September 4, 2009, Singh filed a demand for arbitration with the American Arbitration Association seeking the payments that Minnacca had contractually agreed to make. Several days later on September 9, 2009, Minnacca filed a complaint in federal court, seeking to void the Agreement and alleging actual fraud, constructive fraud, breach of fiduciary duty [for] mismanagement, breach of fiduciary duty [for] fraud, unilateral mistake of fact, mutual mistake of fact, civil theft and conversion, and unfair and deceptive trade practices under N.C.G.S. § 75.1-1. Minnacca seeks an award of damages, costs, and attorneys fees, and asks the Court to "[d]eclare the Buy-Out Agreement and its exhibits to be null and void." (Document No. 1, p. 17).

Essentially, Minnacca contends in its Complaint that the Agreement was the product of deliberate fraud by Singh. Minnacca alleges that Singh controlled its finances and financial records, mismanaged company funds, and fraudulently concealed substantial losses. Minnacca contends that, when Singh negotiated the Purchase Agreement, he intentionally misled the company about its lack of profitability and exploited his personal romantic involvement with Niki Kapoor, Minnacca's General Operations Manager and the daughter of Minnacca's sole-shareholder. Minnacca contends that Singh concealed his fraud by removing financial records and a computer hard drive from the company office. (Document No. 1, ¶¶ 41-42).

Minnacca seeks damages for Singh's alleged misconduct and seeks to invalidate the Agreement, thereby eliminating its contractual obligation to pay Singh the amounts specified in the Agreement. Minnacca argues that most of its claims are not subject to arbitration. Singh on the other hand contends that the arbitration clause in the Agreement expressly applies here and should be enforced.

---

left, Minnacca discovered it actually had nearly $100,000 in losses for that period.

## II. Analysis

The Federal Arbitration Act ("FAA") governs written agreements to arbitrate. 9 U.S.C. § 1 *et seq*. Section 3 of the FAA, 9 U.S.C. § 3, provides in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ....

The primary purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Vulcan Chemical Technologies, Inc. v. Barker*, 297 F.3d 332, 339-340 (4th Cir. 2002) (citing *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 479 (1989)). Federal law favors arbitration in order to resolve cases quickly and efficiently, and to reduce litigation expenses. *COMSAT Corp. v. Nat'l. Science Foundation*, 190 F.3d 269, 276 (4th Cir. 1999); *Burton v. Bush*, 614 F.2d 389 (4th Cir. 1980). If the courts determine that the disputed issues are "within the substantive scope of the agreement," the court will order the parties to arbitrate the matter. *Murray v. United Food and Comm. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).[2]

---

[2]If certain issues are not referable to arbitration, the court has discretionary power to stay the litigation pending arbitration of the other issues in the case. *See American Recovery Corp.*, 96 F.3d at 97 ("the decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket.") (citing *Moses H. Cone*, 460 U.S. at 1, 20 n. 23); *Summer Rain v. Donning Co. Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992); *U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F.Supp.2d 934, 939 -940 (D.Md. 2004).

Review of the Purchase Agreement reflects that the parties agreed to submit any claims concerning their rights under the Purchase Agreement to binding arbitration. (Document No. 7-2, Ex. B, ¶ 5). Specifically, the Purchase Agreement sets forth:

> If a dispute or claim shall arise between the parties with respect to any of the terms or provisions of this Agreement, or with respect to the performance by any of the parties under this Agreement, then the parties agree that the dispute shall be arbitrated in Mecklenburg County, North Carolina, before a single arbitrator, in accordance with the rules of the American Arbitration Association.

The Fourth Circuit has held that an arbitration clause covering all disputes arising out of a contract includes "every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute." *American Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 93 (4th Cir. 1996) (holding that the arbitration clause extended to claims of tortious interference with business expectancy and contractual relations); *see also, Long v. Silver*, 248 F.3d 309, 318 (4th Cir. 2001) (holding that arbitration clause extended to fraud claims because those claims were significantly related to the agreement); *Collie v. Wehr Disolution Corp.*, 345 F.Supp.2d 555, 562-63 (M.D.N.C. 2004) (explaining that the characterization of a claim as tort or contract does not control and that courts will look to the relationship of the claim to the subject matter of the arbitration clause).

Minnacca argues that the Agreement should be voided due to fraud by Singh. Although Minnacca argues that most of its claims are not arbitrable, the present claims appear to fall within the broad language of the contractual provision requiring arbitration of any disputes regarding "the terms or provisions of this Agreement, or with respect to the performance by any of the parties under this Agreement." The allegations of the Complaint pertain in large part to the validity and

performance of the Agreement.

The Fourth Circuit Court of Appeals has explained that:

> In *American Recovery*, we held that a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a "significant relationship" exists between the asserted claims and the contract in which the arbitration clause is contained. See *American Recovery*, 96 F.3d at 93. The arbitration clauses contained in the 1972 and 1999 Agreements are worded in the same broad manner as the arbitration clause at issue in American Recovery. See id. (holding that an arbitration clause that provided arbitration for any dispute that "ar[ose] out of or related to" the agreement was a broad clause, "capable of expansive reach").

*Long*, 248 F.3d at 316. In the present case, the claims are significantly related to the Agreement. For example, the counts for actual and constructive fraud allege that Singh fraudulently induced Minnacca to execute the "fraudulent Buy-Out Agreement;" (Document No. 1, ¶¶ 45, 51) and that the "Buy-Out Agreement was supported by inadequate consideration so gross and palpable as to shock the moral sense." (*Id*. ¶ 52). These claims are arbitrable.

The Complaint alleges in various ways that Minnacca was fraudulently induced into entering into the Agreement. The United States Supreme Court has held that a fraud claim relating to inducement of an agreement generally is covered by an arbitration clause that extends to claims "arising out of or relating to this agreement." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 813-14 (4th Cir. 1989) (holding that a "fraud in the inducement" claim is arbitrable). The counts for breach of fiduciary duties allege that Singh affirmatively misrepresented Minnacca's fair market value, "gave grossly misleading reports to Kapoor regarding the Company's financial condition," failed to keep accurate financial records, and removed "the Company's financial records from its office." (*Id*.

1, ¶¶ 57, 61). Minnacca argues that Singh fraudulently induced the Buy-Out Agreement by misrepresenting the company's value and income. Thus, Minnacca's fraud and breach of fiduciary duty claims are significantly related to the Agreement and are subject to arbitration.

With respect to Minnacca's claims for "unilateral and/or mutual mistake of fact," the language of the Complaint reflects that these claims are also significantly related to the Agreement. (*Id*., ¶¶ 65-67, 69-71 alleging that the "general nature of the Company's financial health .... was the very essence of the Buy-Out Agreement" and that "[a]s a result of this unilateral mistake of fact, the Buy-Out Agreement was rendered voidable by the Company."). The Agreement was allegedly based in large part on Singh's false representations regarding the company's finances. *Long*, 248 F.3d at 319; *American Recovery*, 96 F.3d at 95 (noting that when proof of the claim is rooted in the terms and existence of the contract, the claim is arbitrable). Keeping in mind the strong federal policy favoring arbitration, these claims all appear to have either a direct or significant relationship to the Agreement.

The "unfair and deceptive trade practices" claim relates to Singh's alleged fraud in inducing Minnacca to sign the Agreement, and thus, this claim is also significantly related to the Agreement and is arbitrable. (Id. ¶ 79 "As a result of Singh's fraud..."); *and see, J.J. Ryan & Sons*, 863 F.2d at 319 (holding that an unfair and deceptive trade practice claim was manifestly in connection with the agreement and, thus, subject to arbitration). The "civil theft and conversion" claim arguably has a significant relationship with the Agreement, as Minnacca alleges that Singh fraudulently induced it to enter the Agreement and then removed financial documentation to hide the true state of the company's financial condition. (*Id*. ¶ 73 "On information and belief, Singh removed from the Company's offices substantially all of its financial records.").

The United States Supreme Court has emphasized that any doubts regarding the scope of issues for arbitration should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 24-25 (1983); and see, *Long,* 248 F.3d at 316. "[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins.*, 867 F.2d at 812.

**IT IS, THEREFORE, RECOMMENDED** that the "Motion to Dismiss and Compel Arbitration" (Document No. 7) should be **GRANTED**; this case should be dismissed and arbitration should be compelled.

### III. Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure to file objections to this memorandum with the District Court constitutes a waiver of the right to *de novo* review by the District Court, *Snyder*, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984).

Signed: November 9, 2009

David C. Keesler
United States Magistrate Judge